Spain, J.
Appeal from a judgment of the Supreme Court (Coccoma, J.), rendered December 19, 2011 in Schenectady County, upon a verdict convicting defendant of the crimes of attempted assault in the first degree (two counts) and attempted gang assault in the first degree.
On March 30, 2010, Latoya King (hereinafter the victim) was walking alone on a street near her home in the City of Schenectady, Schenectady County when an SUV passed by in which defendant, whom she recognized, was a passenger. Moments later, defendant and three other females unknown to the victim turned a corner on foot coming in her direction; defendant stated “we are going to get her” and the group circled around the victim. Defendant and the victim got into an altercation, during which the victim was tripped or fell over, and then *1162 defendant came down toward the victim and cut the right side of her face with what she testified felt like a knife or blade. The victim grabbed defendant’s arm to block a second female from cutting her with a small pocketknife, but that second assailant was still able to inflict a cut to the left side of her face. The victim managed to escape and sought medical treatment at an emergency room, where stitches were applied to close the vertical cut to the right side of her face, which extended from her hairline, over her eye and down to her upper lip, where the laceration was deepest. Defendant was indicted on charges of assault in the first degree (two counts) and gang assault in the first degree.
At defendant’s trial, the victim identified defendant as her assailant, and her visible facial scar was observed by the jury. The People established that in early 2010, the victim began a relationship with Charles Greene, who was defendant’s former long-term boyfriend. Thereafter, defendant began leaving voice mail and text messages harassing and threatening the victim and her children, including threats to kill or cut her. Greene, who was no longer dating the victim at the time of trial, testified that he overheard some of defendant’s messages on the victim’s phone, threatening her and himself. Gloria George, a friend of the victim who was incarcerated in the same block area in the county jail as defendant, testified that defendant confronted her about being friends with the victim. George overheard defendant telling several other inmates — who asked why she was “messing with” George — that she had been in an altercation with the victim during which she jumped the victim and cut her face; George also heard defendant threaten to cut the other side of the victim’s face. George was subpoenaed to testify and did not receive any promises or plea deals in exchange for her testimony.
Letesha Henry testified that she met defendant while both were incarcerated in the county jail and, after daily conversations over the course of several months, they became friends. Henry testified that defendant recounted the incident with the victim, describing how she had harassed and threatened the victim after learning that Greene was in a relationship with her; defendant explained that she was out with her friends when she jumped the victim and cut her face while defendant’s friends held her down, admitting she “always keeps a razor on her [self].” The jury was informed that Henry testified pursuant to a plea agreement in which — in exchange for her truthful testimony at defendant’s trial — she would be permitted to enter a guilty plea to the reduced charge of second degree assault to *1163 resolve a pending first degree assault charge,[1] and be sentenced to 2V2 years in prison. Defendant testified, denying that she assaulted the victim. She claimed that she was at her Schenectady home the entire day of the assault with her boyfriend and best friend, both of whom also so testified. Convicted after a jury trial of attempted assault in the first degree (two counts) and attempted gang assault in the first degree, defendant was sentenced to three concurrent prison terms of 10 years with five years of postrelease supervision, and now appeals.
The jury’s verdict was not contrary to the weight of credible evidence.[2] The convictions for attempted first degree assault were proved with evidence that defendant, with intent to cause serious physical injury and to seriously and permanently disfigure the victim, engaged in conduct tending to effect the commission of these crimes (see Penal Law §§ 110.00, 120.10 [1], [2]). Neither evidence of actual serious physical injury nor evidence of serious and permanent disfigurement was required for these attempt convictions (see People v Koufomichalis, 2 AD3d 987, 988 [2003], lv denied 2 NY3d 742 [2004]), and defendant’s intent was readily inferable from her conduct and remarks (see People v Brown, 100 AD3d 1035, 1036-1037 [2012], lv denied 20 NY3d 1009 [2013]). While the victim was not sure that she actually saw a knife or razor in defendant’s hand, and no weapon was found, her testimony clearly established that, as defendant came toward her, she felt a knife or blade in defendant’s hand cutting into her face, and she sustained laceration wounds, all of which established that defendant attempted to assault her with an object that was readily capable of causing death or serious physical injury, i.e., a dangerous instrument (see Penal Law § 10.00 [13]; People v Carter, 53 NY2d 113, 116-117 [1981]; People v Hamer, 69 AD3d 484, 484 [2010], lv denied 15 NY3d 750 [2010]; People v Wilson, 240 AD2d 774, 775 [1997], lv denied 90 NY2d 899 [1997]).
With regard to defendant’s conviction of attempted gang assault in the first degree, the proof demonstrated that defendant, acting with the intent to cause serious physical injury to the victim and “aided by two or more persons actually present,” engaged in conduct tending to effect the commission of this assault (Penal Law § 120.07; see Penal Law § 110.00). The People *1164 were not required to prove that the others present actually aided defendant’s assault — although the testimony established that one other assailant also cut the victim while another verbally encouraged the assault — or that the others shared her criminal intent, only that they were “in a position to render immediate assistance to the defendant” (People v Sanchez, 13 NY3d 554, 564 [2009]; see People v Cordato, 85 AD3d 1304, 1311 [2011], Iv denied 17 NY3d 815 [2011]). Thus, even if a different verdict would have been reasonable, upon weighing — in a neutral light — the sharply conflicting testimony regarding whether defendant perpetrated this assault, and according considerable deference to the jury’s ability to observe the witnesses and assess their credibility, we conclude that the jury was entirely justified in rejecting defendant’s unpersuasive alibi testimony and in crediting the account of the victim regarding the assault, as corroborated by other witnesses (see People v Danielson, 9 NY3d 342, 348 [2007]).
Defendant next argues that Supreme Court erred in denying her motion to set aside the verdict which, as relevant here, was premised upon the People’s failure to disclose certain Brady material, i.e., the full terms of Henry’s cooperation agreement, which she contends impaired the defense’s ability to impeach Henry’s credibility (see CPL 330.30 [1]). At trial, the People elicited from Henry that her agreement with the People allowed her to enter a guilty plea to a reduced assault charge with sentencing leniency, as noted above, in exchange for her truthful testimony at defendant’s trial. What the People did not elicit or disclose[3] is that Henry had concomitantly agreed to testify against another person in an unrelated prosecution for armed robbery, also based on that person’s admissions to her while they were incarcerated.[4] The parties dispute whether this constitutes Brady material subject to disclosure.
“A Brady violation occurs when the People fail to timely disclose all exculpatory and material evidence (see Brady v Maryland, 373 US 83 [1963]), including evidence that could be used to challenge the credibility of a crucial prosecution witness” (People v Williams, 50 AD3d 1177, 1179 [2008] [citation omitted]) or “[t]he existence of an agreement between the prosecution and a witness, made to induce the testimony of the wit *1165 ness” (People v Cwikla, 46 NY2d 434, 441 [1979]; see People v Steadman, 82 NY2d 1, 7 [1993]; People v Savvides, 1 NY2d 554, 557 [1956]; see also Giglio v United States, 405 US 150, 154-155 [1972]).[5] 6 The People emphasize that the jury learned that Henry was testifying pursuant to a very beneficial cooperation agreement and the full extent of the leniency and benefits afforded her, which the defense made full use of in impeaching her on cross-examination. The People also argue that Henry’s agreement to testify in an unrelated case is irrelevant to her credibility and is not Brady evidence. Defendant argues that she was prejudiced because the jury did not learn that Henry had also agreed, as part of the same agreement in which she was testifying against defendant, to testify that another inmate had similarly confessed to her in jail; defendant asserts that this evidence would have undermined the believability of Henry’s testimony here, as defendant had likewise allegedly confessed to her in jail.
Certainly, a cooperating witness’s knowledge of, and agreement to also testify in, an unrelated matter may often not sufficiently bear on the witness’s credibility or believability in the present prosecution so as to constitute impeachment material subject to Brady disclosure (see People v Jones, 272 AD2d 930, 932 [2000], Iv denied 95 NY2d 891 [2000]). Case law does not, however, offer a definitive answer as to whether the People’s Brady obligation here extended only to the benefits and leniency conferred on Henry as a cooperating witness and her agreement to testify in this prosecution, or whether the People’s Brady obligation extended further to all terms of the cooperation agreement, including her commitment to testify in an unrelated prosecution. Under the circumstances of this case, we find that a convincing argument can be made that Henry’s additional obligation to testify in the other matter — and the similarity of her expected testimony that the inmate had confessed to her— was relevant to her credibility in this case (cf. People v Colon, 13 NY3d 343, 349 [2009]), mindful that, ordinarily, “it is for the jury to determine how much value to assign [a cooperation agreement] in terms of assessing the witness’s credibility” (People v Novoa, 70 NY2d 490, 497 [1987]).
However, even assuming, without deciding, that the full terms of Henry’s cooperation agreement — including those aspects pertaining to the other matter — were Brady material subject to disclosure, reversal is not required. Where, as here, nondisclo *1166 sure follows the defense’s specific request for materials, evidence is deemed material and reversal is required only “if there is a ‘reasonable possibility’ that, had that material been disclosed, the result would have been different” (People v Bond, 95 NY2d 840, 843 [2000]; see People v Fuentes, 12 NY3d 259, 263 [2009]; People v Williams, 50 AD3d at 1179). Here, the victim was a strong witness who, from the outset, positively identified defendant — who she knew — as her assailant; her testimony was corroborated by Greene’s testimony regarding defendant’s threats to the victim and medical evidence of the victim’s lacerated face. The testimony of George — who, while a friend of the victim, received no benefit for her testimony — that she heard defendant admit cutting the victim’s face during this assault further corroborated the victim’s account. Thus, the verdict in no sense turned solely or even predominantly on Henry’s testimony (cf. People v Colon, 13 NY3d at 349; People v Steadman, 82 NY2d at 5, 8-9; People v Williams, 50 AD3d at 1180), and we do not find that there was a reasonable possibility that, had the jury learned that Henry also agreed to testify in an unrelated case to a confession by another inmate, it would have found defendant not guilty of these charges (see People v Vilardi, 76 NY2d 67, 77 [1990]; People v Phillips, 55 AD3d 1145, 1147 [2008], Iv denied 11 NY3d 899 [2008]). Accordingly, any error was harmless (see People v Steadman, 82 NY2d at 8-9; People v Crimmins, 36 NY2d 230, 237 [1975]).
Defendant’s remaining contentions have been reviewed, including her challenge to the sentence as harsh and excessive or as cruel and unusual punishment, and determined to lack merit.
Rose, J.P., McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.

. Henry faced a potential 5- to 25-year sentence.

. To the extent that defendant raises a challenge to the legal sufficiency of the evidence, such claim is unpreserved (see People v Lane, 7 NY3d 888, 889 [2006]). However, we necessarily review the sufficiency of the evidence on each element in our review of the weight of the evidence, for which no preservation rule applies (see People v McCray, 102 AD3d 1000, 1004 n 2 [2013]; People v Newkirk, 75 AD3d 853, 855 [2010], Iv denied 16 NY3d 834 [2011]).

. Supreme Court held an inquiry during the trial, outside the presence of the jury, in which the Assistant District Attorney represented the terms of the agreement, and merely indicated that Henry’s testimony “in this case” was required.

. On the same day that Henry signed an affidavit regarding defendant’s jailhouse confessions to her, Henry had also signed an affidavit attesting that this other person had also confessed to her regarding an armed robbery.

. Further, a prosecutor is obligated to ensure a correct and complete recitation of the full terms of an agreement with a cooperating witness (see People v Steadman, 82 NY2d at 7-8; People v Cwikla, 46 NY2d at 441).