■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRIAN SIMMONS, Appellant. [974 NYS2d 185]—

---

* Notably, defendant's probation was subsequently revoked and he was sentenced to a term of imprisonment.

Spain, J. Appeal from a judgment of the County Court of Schenectady County (Hoye, J.), rendered May 11, 2011, upon a verdict convicting defendant of the crime of assault in the first degree.

Shortly after midnight on December 8, 2009, defendant shot Joel Winkler Jr. with a shotgun as Winkler stood unarmed in the doorway to the garage attached to defendant's home in the Town of Rotterdam, Schenectady County. Winkler was in a relationship of several months with defendant's niece by marriage, Erika Barrett, who had been living with defendant and his wife, Penny Simmons, since September 2009, when Barrett turned age 18. While initially defendant and Simmons got along with Winkler, who picked up Barrett daily at the house, tensions developed over, among other things, defendant's excessive daily alcohol consumption and behavior or remarks to Barrett and Winkler, as well as defendant and Simmons' open disapproval of Winkler. On the night of the shooting, defendant woke up Barrett and told her that she had to move out within seven days because she was causing too much stress; she packed her things and called Winkler to come and pick her up, crying hysterically. A heated argument erupted in the house and then in the garage between Barrett and Simmons, who called Barrett's mother to come and get her; Simmons physically restrained Barrett, refusing to let her leave with Winkler, who had pulled his car into the driveway. Winkler waited, observing their heated arguments, then exited his car and approached the garage door and told Barrett she could leave; he tried to persuade Simmons to let Barrett go with him, arguing with Simmons about Barrett's right to leave.

According to Winkler and Barrett, Simmons pulled Barrett by the shoulders as she tried to leave, and blocked her exit; Simmons then pushed and struggled with Winkler, who did not fight back. Winkler and Barrett testified that defendant stood silently in the rear of the garage and never moved or provided a warning until he picked up his shotgun, walked toward Winkler and shot him at close range in the upper chest near his left shoulder only inches from his heart, stating, "Let's see if you ever step foot into my house again." Winkler testified that when

he saw defendant with a shotgun, he turned to his right to leave, and was shot by defendant. Simmons, who called 911 moments before the shooting, testified that she told Winkler to leave and he pushed and shoved her and forced his arm up to her throat, choking her, until defendant pushed Winkler off her and struggled with him. Defendant testified that he tried to stay out of the conflict until Winkler choked his wife and slammed her against a wall, at which point he claims he fought with Winkler, who hit him causing him to fall down; only then did defendant get his gun, load it, scream at Winkler to get out of the house, warn him he was going to shoot and to get his hands off his wife, and then he intentionally shot Winkler.

Defendant was indicted for the crime of intentional assault in the first degree (intent to cause serious physical injury with a deadly weapon). At trial, the disputed issues were whether the shooting had been justified and whether defendant's alleged intoxication or other facts negated a finding of intent. The jury was instructed on the justification defense but convicted defendant as charged. His motion to set aside the verdict was denied, and a prison sentence of 10 years with three years of postrelease supervision was imposed. Defendant now appeals.

Initially, defendant's challenge to the legal sufficiency of the evidence disproving his justification defense was not preserved for our review, as it was not specifically raised in his motion to dismiss at the close of the People's proof,[1] which defendant did not renew after he presented testimony and the proof was closed (*see People v Hawkins*, 11 NY3d 484, 492 [2008]; *People v Lane*, 7 NY3d 888, 889 [2006]; *People v Gray*, 86 NY2d 10, 19-22 [1995]). Further, while defendant raised this challenge in his CPL 330.30 (1) motion to set aside the verdict, such a motion can only be granted for issues that, if raised on appeal, "require[d] a reversal . . . as matter of law" (CPL 330.30 [1]). A legal sufficiency challenge that has not been properly preserved at trial is not an issue that would require reversal as a matter of law and, therefore, is not a proper basis for CPL 330.30 (1) relief, which was properly denied (*see People v Hines*, 97 NY2d 56, 61 [2001]; *People v Sudler*, 75 AD3d 901, 904 [2010], *lv denied* 15 NY3d 956 [2010]; *People v Thomas*, 38 AD3d 1134, 1136 [2007], *lv denied* 9 NY3d 852 [2007]).

Turning to defendant's challenge to the verdict as against the weight of the evidence, we necessarily review the sufficiency of the evidence of each element (*see People v Johnson*, 107 AD3d

---

**1.** Defendant's motion for a trial order of dismissal at the close of the People's case addressed only the legal sufficiency of the evidence of serious physical injury and intent.

1161, 1163 n 2 [2013], *lv denied* 21 NY3d 1075 [2013]). Even if a different verdict would have been reasonable, upon weighing the evidence and conflicting accounts of the shooting in a neutral light and according deference to the jury's first-hand credibility assessments, we find that the jury was warranted in finding beyond a reasonable doubt that defendant was not justified in using deadly force and had acted with the requisite intent, and in finding him guilty as charged (*see People v Danielson*, 9 NY3d 342, 348 [2007]; *People v Romero*, 7 NY3d 633, 636 [2006]; *see also* Penal Law §§ 25.00 [1]; 35.00). Defendant's contention that the evidence established that his actions were justified is based on a mischaracterization of the trial testimony, particularly that of Winkler and Barrett, and reliance upon Simmons' and defendant's accounts, which the jury was entitled to reject.

The jury was charged that the applicable justification defense required that defendant, as a person in possession of his home/dwelling, "reasonably believe[d] that another person[—Winkler—was] committing or attempting to commit a burglary of such dwelling," entitling him to use "deadly physical force upon such other person" if he "reasonably believe[d] such to be necessary to prevent or terminate the . . . burglary" (Penal Law § 35.20 [3]; *see* Penal Law § 35.15 [2] [c];[2] *People v Cox*, 92 NY2d 1002, 1004 [1998]). This inquiry involves a subjective and objective element, i.e., it focuses on the defendant and the circumstances he or she confronted at the time of the shooting, as well as " 'what a reasonable person in those circumstances and having defendant's background and experiences would conclude' " (*People v DiGuglielmo*, 75 AD3d 206, 215 [2010], *affd* 17 NY3d 771 [2011], quoting *People v Wesley*, 76 NY2d 555, 559 [1990]; *see People v Fisher*, 89 AD3d 1135, 1137 [2011], *lv denied* 18 NY3d 883 [2012]).

It was not disputed that Winkler had been to defendant's home many times in recent weeks to pick up Barrett and that, on the night of the shooting, defendant and Simmons were aware that Winkler came in response to Barrett's phone call requesting that he pick her up at that late hour. The testimony of Winkler and Barrett established that it was Barrett who opened the garage door in her effort to leave; Winkler did not hit, push, choke or initiate any contact with Simmons and had no physical contact or words with defendant. Winkler only came

---

2. The defense conceded during the charging conference that Winkler had not been using or about to use deadly physical force and, thus, Penal Law § 35.15 (1) and (2) (a) (i)—regarding use of deadly physical force in defense of another—were inapplicable.

to the door to get Barrett and did not attempt to enter the home; Winkler was pulled into the garage at most one foot during the struggle, while Barrett was holding his arm and both were being pushed or pulled by Simmons in her effort to prevent Barrett from leaving. They further testified that, without warning, defendant shot Winkler, who never suggested he had a weapon, as Winkler turned in the doorway to leave, about an arm's length from Simmons. Simmons' and defendant's accounts of the incident—in which Winkler allegedly assaulted and choked Simmons, prompting defendant's intervention and struggle with Winkler and warning that he would shoot—were not more believable or particularly credible. Simmons and defendant did not report any injuries to responding police, instead producing pictures taken days later. Defendant's testimony that he feared Winkler because Winkler had threatened to kill him on a previous occasion, after defendant made crude comments to Barrett, was easily discredited by defendant's own testimony reflecting that he did not take Winkler's remarks seriously; other testimony also supported the conclusion that, in context, Winkler's earlier remarks—"I killed people for less"—would not have instilled fear in any reasonable person. Indeed, defendant and Simmons never reported the incident to the police, continued to allow Winkler to pick up and see Barrett daily, and there was no credible testimony that this remark caused them to fear him.

Defendant's own testimony undermined his justification defense, reflecting that he was mad at Winkler and wanted him to leave without Barrett, and not that he feared Winkler or believed he was attempting to burglarize his home. Indeed, when asked why he did not fire a warning shot, defendant testified that he "wasn't mad at [his] roof . . . This a\*\*hole was in my house. He needed to go," not that he feared Winkler. The credible testimony did not support the conclusion, now urged by defendant, that Winkler entered with intent to commit a crime in defendant's home, such as an assault upon anyone present, but, rather, established merely his intent to pick up his upset girlfriend (*see* Penal Law § 140.20). Further, "[w]hen burglary is predicated on an unlawful entry, [the intruder] must have had the intent to commit a crime *other than* criminal trespass at the time of entry" (*People v Ramirez*, 42 AD3d 671, 672 [2007] [emphasis added]; *see People v Gaines*, 74 NY2d 358, 363 [1989]). Thus, we find that the jury's rejection of the justification defense was not contrary to the weight of credible evidence (*see People v Fisher*, 89 AD3d at 1137-1138).

Next, we find no error in County Court's refusal to charge

reckless assault in the second degree (*see* Penal Law § 120.05 [4]).[3] On cross-examination, defendant readily admitted that he shot Winkler intentionally, which was consistent with his statements after the shooting. Thus, even considering the evidence in a light most favorable to defendant (*see People v Henderson*, 41 NY2d 233, 236 [1976]; *People v Britt*, 283 AD2d 778, 780-781 [2001], *lv denied* 96 NY2d 916 [2001]), there was no reasonable view of the evidence to support a finding that, in shooting Winkler, defendant acted recklessly (*see* Penal Law § 15.05 [3]) and not intentionally (*see* Penal Law § 15.05 [1]). Accordingly, the court properly denied defendant's request for this lesser charge (*see* CPL 300.50 [1]; *People v Miller*, 6 NY3d 295, 302 [2006]).

Next, upon our review of the record, we find that defendant received a fair trial and was not deprived of the effective assistance of counsel. Defendant's claims of prosecutorial misconduct are largely unpreserved given the failure to object to them at trial (*see People v Harris*, 98 NY2d 452, 492 [2002]). Testimony concerning defendant's gun ownership, gun rights signage in the garage and hunting experience, and history of bragging about the accuracy of his shooting abilities, while arguably unduly repeated, were relevant to key disputed issues at trial, including defendant's intent[4] in shooting Winkler and his experience with and knowledge of guns, as the prosecutor argued to the jury. The evidence was not improperly adduced to argue that defendant had a propensity for violence. The prosecutor's efforts to compare defendant's tactics and experience while hunting to his actions in the garage—in remaining quietly in the rear of the garage and stealthily and suddenly surprising Winkler by aiming a gun at him, as Winkler and Barrett described—were fair comment on the evidence and not outside the bounds of fair advocacy. Since this was not evidence of prior bad acts or crimes, a pretrial *Molineux* ruling was not required (*see People v Billups*, 45 AD3d 1176, 1177 [2007]). When the prosecutor argued that defendant was "fixated on guns" or that defense counsel wanted the jury to acquit, County Court sustained defense objections. Most of the summation remarks defendant now challenges were fair comment on the evidence or

---

**3.** Notably, the jury was instructed regarding intentional assault in the second degree (*see* Penal Law § 120.05 [1]).

**4.** Simmons essentially testified that the gun's discharge was accidental and defendant had not intended to shoot Winkler, only to frighten him. When defendant testified as the last defense witness, he effectively conceded that he shot Winkler intentionally, although denying any intent to kill him, claiming that he had been justified, given Winkler's alleged assault on Simmons, his prior threats and his unlawful entry.

reasonable inferences therefrom. Viewed as a whole, we do not find that there was prosecutorial misconduct of the type that deprived defendant of due process or a fair trial (*see People v Tarantola*, 178 AD2d 768, 770 [1991], *lv denied* 79 NY2d 954 [1992]; *see also People v Calabria*, 94 NY2d 519, 523 [2000]; *cf. People v Riback*, 13 NY3d 416, 423 [2009]).

Defendant's specific contentions in his pro se brief that defense counsel did not effectively represent him are belied by the record. Winkler did not testify to an uncharged crime by defendant; rather, he testified that immediately after this shooting he thought, incorrectly, that defendant had also shot one of the others and fled with Barrett. There was no testimony or evidence that anyone other than Winkler was shot and, thus, no reason for defense counsel to object. To the extent that defendant argues that defense counsel failed to utilize the prior statements of the People's witnesses to impeach their trial testimony, this is inaccurate and, moreover, defendant has not persuasively demonstrated the absence of legitimate or strategic reasons for counsel to forgo probing these alleged inconsistencies (*see People v Rivera*, 71 NY2d 705, 709 [1988]). Viewed in totality, defense counsel vigorously pursued a cogent defense, which included justification and intoxication defenses, effectively cross-examined witnesses, made appropriate objections, and provided overall meaningful representation (*see People v Oathout*, 21 NY3d 127, 128 [2013]; *People v Benevento*, 91 NY2d 708, 712 [1998]). Defendant's remaining contentions likewise lack merit.

Peters, P.J., Stein and McCarthy, JJ., concur. Ordered that the judgment is affirmed.