People v Perez (2020 NY Slip Op 02684)





People v Perez


2020 NY Slip Op 02684


Decided on May 7, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 7, 2020

111110

[*1]The People of the State of New York, Respondent,
v
Alex Perez, Appellant.

Calendar Date: February 14, 2020

Before: Garry, P.J., Egan Jr., Mulvey, Aarons and Colangelo, JJ.


Matthew C. Hug, Albany, for appellant.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.



Aarons, J.
Appeal from a judgment of the Supreme Court (Breslin, J.), rendered April 24, 2019 in Albany County, upon a verdict convicting defendant of the crimes of attempted assault in the first degree and assault in the second degree.
Defendant was charged in a multicount indictment stemming from an incident where the victim sustained lacerations after being stabbed and slashed with a sharp instrument. After defendant had been indicted, a search warrant was issued granting access to, among other things, defendant's cell site location information from his cell phone. Prior to trial, defendant moved to suppress the evidence obtained by the search warrant. Supreme Court found that probable cause supported the warrant application and, therefore, denied defendant's motion. Following a jury trial, defendant was convicted of attempted assault in the first degree and assault in the second degree. The court sentenced defendant to concurrent prison terms, the greatest of which was eight years, followed by five years of postrelease supervision. Defendant appeals. We affirm.
Defendant argues that the verdict was not supported by legally sufficient evidence or, alternatively, was against the weight of the evidence. We disagree. At trial, the victim testified that he and defendant had a hostile relationship after they could not reach an agreement concerning some contracting work. Prior to the incident in question, defendant dumped a water bottle on the victim and said, "I'm gonna get you. You ain't gonna see it coming."[FN1] The victim further testified that, on the day in question, as he was unloading a truck near a property on Second Street in the City of Albany,[FN2] defendant came up behind him and stabbed him in the back and sliced him in the face. The victim turned around and then defendant "dart[ed] after [him] again." According to the victim, defendant said, "I told you I would get you." Defendant tried to get the victim again but the victim ran away. The victim was able to identify defendant by his voice and, although defendant initially wore a bandana over his face, it fell off and the victim recognized him.[FN3] The victim stated that, as a consequence of the attack, he was saturated in blood and "[a] piece of [his] ear was hanging off." A physician who treated the victim testified that the victim sustained lacerations on his earlobe, back and neck and that he sutured them. The physician stated that, based on how the victim's ear was cut, there could be an impairment of blood supply and the ear could die and fall off. The victim also had follow-up care with a plastic surgeon and had scars from this incident.
Viewing the foregoing evidence in the light most favorable to the People, we find that the evidence was legally sufficient to support the verdict and to establish that defendant was the assailant (see People v Watson, 174 AD3d 1138, 1140 [2019], lv denied 34 NY3d 955 [2019]; People v Reitz, 125 AD3d 1425, 1425 [2015], lv denied 26 NY3d 934 [2015]; People v Lausane, 16 AD3d 523, 523 [2005]).[FN4] As to defendant's weight of the evidence argument, given that defendant denied stabbing the victim and offered proof that he was at his mother's house on Quail Street in Albany at the time when the victim stated that the alleged crimes occurred, an acquittal would not have been unreasonable. Notwithstanding this proof, the jury apparently credited the testimony of the victim and his friend — both of whom were thoroughly cross-examined — in reaching its verdict (see People v Pietoso, 168 AD3d 1276, 1277-1278 [2019], lv denied 33 NY3d 1034 [2019]; People v Danford, 88 AD3d 1064, 1066 [2011], lv denied 18 NY3d 882 [2012]). Although defendant contends that the victim and his friend were unworthy of belief and gave contradictory testimony, this pertains to their credibility — a matter resting within the province of the jury to resolve (see People v Wright, 160 AD3d 1110, 1112 [2018], lv denied 31 NY3d 1154 [2018]; People v Gunn, 144 AD3d 1193, 1194 [2016], lv denied 28 NY3d 1145 [2017]). Accordingly, we cannot say that the verdict was against the weight of the evidence (see People v Watson, 174 AD3d at 1140; People v Coppins, 173 AD3d 1459, 1463 [2019], lv denied 34 NY3d 929 [2019]; People v Johnson, 107 AD3d 1161, 1163 [2013], lv denied 21 NY3d 1075 [2013]).
Defendant also claims that Supreme Court erred in denying his suppression motion because the search warrant application directed to his cell phone provider was not supported by probable cause.[FN5] Assuming, without deciding, that the suppression motion should have been granted, we find that such error was harmless (see generally People v Mairena, ___ NY3d ___, ___, 2019 NY Slip Op 08978, *5 [2019]; People v Crimmins, 36 NY2d 230, 241-242 [1975]).[FN6] The record discloses that the victim identified defendant as the assailant after recognizing his voice and then seeing his face. The victim's friend likewise identified defendant upon seeing his face. In view of the strong and unequivocal identification testimony by the victim and his friend and the threatening text messages sent by defendant to the victim, there was overwhelming evidence of defendant's guilt (see People v Rice, 75 NY2d 929, 932 [1990]; People v Rios, 183 AD2d 734, 734-735 [1992], lv denied 80 NY2d 908 [1992]). Furthermore, any error did not infect or taint the verdict given that the cell site location information derived from the search warrant was beneficial to both the People and defendant (see generally People v Mairena, 2019 NY Slip Op 08978 at *5). At trial, a records custodian from defendant's cell phone provider stated that it was possible to make a map showing the location of cell phone towers, which corresponded to where a cell phone was located when a call was made. Any location, however, would only be an "approximation." An analyst with a crimes analysis center testified that, based on the information provided by defendant's cell phone provider, defendant's cell phone was in the general area of both the Second Street location — i.e., where the crime occurred — and defendant's mother's house on Quail Street — i.e., where defendant claimed he was — during the incident in question. The record also indicates that defendant's mother's house was approximately a four-minute walk from the Second Street location. Given that the cell site location evidence retrieved from defendant's cell phone was probative of both the People's case and defendant's alibi defense, we find that such evidence did not affect the verdict.[FN7]
We reject defendant's argument that he received ineffective assistance of counsel based upon his counsel's failure to object to the admission of certain Molineux evidence. The Molineux evidence at issue pertained to an alleged insurance fraud scheme between defendant and the victim and was relevant to the issues of identity and motive. That said, counsel cannot be deemed ineffective for failing to raise an objection that had little or no chance of succeeding (see People v Leonard, 177 AD3d 1158, 1163 [2019], lv denied 34 NY3d 1160 [2020]; People v Stokes, 159 AD3d 1041, 1043 [2018]). Moreover, the record discloses that counsel made opening and closing statements, raised appropriate objections, challenged the veracity of the People's witnesses, offered proof supporting an alibi for defendant and obtained an acquittal of one of the charges in the indictment. Viewing counsel's representation as a whole, we find that defendant received meaningful representation (see People v Turner, 172 AD3d 1768, 1772 [2019], lvs denied 34 NY3d 930, 939 [2019]; People v Pitt, 170 AD3d 1282, 1286 [2019], lv denied 33 NY3d 1072 [2019]).
Finally, we conclude that the sentence was neither harsh nor excessive. Because the record fails to disclose any abuse of discretion or extraordinary circumstances warranting a modification of the imposed sentence, the sentence will not be disturbed (see People v Coppins, 173 AD3d at 1464; People v Coleman, 151 AD3d 1385, 1389 [2017], lv denied 29 NY3d 1125 [2017]).
Egan Jr., J., concurs.
Garry, P.J. (concurring).
We concur in affirming the judgment of conviction, but write separately to discuss the test applied in finding that the error in denying the motion to suppress the data obtained from defendant's cell phone provider was harmless. We agree with the determination, as "under the test for harmless constitutional error laid down by the Supreme Court of the United States, . . . there is no reasonable possibility that the error might have contributed to defendant's conviction and . . . it was thus harmless beyond a reasonable doubt" (People v Crimmins, 36 NY2d 230, 237 [1975]; see Chapman v California, 386 US 18, 24-25 [1967]).
The trial testimony revealed that the location data obtained from defendant's cell phone provider established nothing more than an "approximation" of his location at the time of the attack. An analyst testified that the data demonstrated that defendant's cell phone was within the target area that included the site of the attack. However, the same data also established — with equal accuracy — that the cell phone was in the area of defendant's mother's home, located only a four-minute walk from the attack site. Defendant's alibi, corroborated by two other witnesses, was that he was at his mother's home at the time of the attack. The data thus supported defendant's alibi to precisely the same extent that it supported the People's theory that defendant perpetrated the attack. The data proved nothing more than that defendant was either where he claimed to be or where the People claimed he was at the time of the attack. The data thus had no probative value, nor any prejudicial effect, whatsoever. There was no possibility, under any reasonable interpretation of the evidence and without regard to the quality of the other proof, that the improper admission of this data affected the verdict in any way.
However, under our test for harmless error as it is ordinarily applied, "unless the proof of [a] defendant's guilt, without reference to the error, is overwhelming, there is no occasion for consideration of any doctrine of harmless error" (People v Crimmins, 36 NY2d at 241; accord People v Johnson, 57 NY2d 969, 970 [1982]). An appellate court must follow a two-step analysis in which it may not give any consideration to the harmlessness of an error unless it has first determined that the evidence of the defendant's guilt was overwhelming — that is, when "the quantum and nature of proof, excising the error, are so logically compelling and therefore forceful in the particular case as to lead the appellate court to the conclusion that a jury composed of honest, well-intentioned, and reasonable men and women on consideration of such evidence would almost certainly have convicted the defendant" (People v Crimmins, 36 NY2d at 241-242 [internal quotation marks omitted]; see People v Mairena, ___ NY3d ___, ___, 2019 NY Slip Op 08978, *5 [2019]). The majority agrees that the evidence was overwhelming; we cannot find that it meets that high standard.
No physical evidence placed defendant at the scene; the case hinged entirely upon a credibility contest between the People's witnesses — the victim and his associate, who allegedly witnessed the attack — and defendant's witnesses, who claimed that defendant was at his mother's home. As defendant argues, the victim's testimony was notably evasive, inconsistent and even combative, and the jury apparently did not fully credit his account, as it acquitted defendant on the most serious charge against him. Some corroboration of the victim's claim that defendant was the attacker was provided by a series of profane, insulting text messages exchanged between defendant and the victim during the days just before the assault, in which defendant repeatedly made express threats that he was planning an imminent attack upon the victim. However, these same messages revealed that the animosity was fully mutual and that the victim's hatred and anger toward defendant was intense — thus supporting defendant's theory that the victim was making false accusations against him as an instrument of revenge. Accordingly, we cannot find that the evidence against defendant was so compelling that it can fairly be characterized as overwhelming (compare People v Rice, 75 NY2d 929, 932 [1990]; People v Rios, 183 AD2d 734, 734-735 [1992], lv denied 80 NY2d 908 [1992]).
After observing the demeanor of the witnesses and listening to their testimony in a fair trial in which both sides had full opportunities to present evidence and cross-examine opposing witnesses, the jury elected to convict defendant on all but one of the charges against him. According the appropriate deference to the jury's credibility assessments, we fully agree with the majority that the weight of the evidence supports the verdict. Nevertheless, as above, if the evidence is not overwhelming, the obvious harmlessness of the error here could be given no consideration and reversal would be required if the Crimmins test for harmless error were strictly applied. For these reasons, we believe that this unusual case calls out for either a clarification of the governing law or an expansion of our current test for harmless error that, in appropriate circumstances, might allow a multifactorial analysis, such that the clear harmlessness of an error might be weighed in conjunction with the quantum of the other proof of a defendant's guilt, rather than entirely disregarded solely because the proof was not otherwise overwhelming.
"The ultimate objective" of our test for harmless error, "grounded in sound policy considerations, is the wise balancing, in the context of the individual case, of the competing interests of the defendant and those of the People" (People v Crimmins, 36 NY2d at 241). In fashioning this test, the Court of Appeals found that "every error of law (save, perhaps, one of sheerest technicality) is, ipso facto, deemed to be prejudicial" unless rendered harmless by other overwhelming proof of guilt (id. at 241 [emphasis added]). In our view, this exemption for errors of "sheerest technicality" reveals a recognition that the purpose of the harmless error analysis would not be served if errors of such complete inconsequence that they could not have affected a defendant's rights under any circumstances must be held to require a new trial solely because the other proof was not overwhelming. The inclusion of this exemption suggests, sub silentio, that the Court of Appeals recognized that there will be times when the prerequisite of overwhelming evidence need not be satisfied in order to conclude, with confidence, that an error is harmless within the scope and purpose of the Crimmins analysis. In our view, this is that unusual case.
Examples of errors that have been found to be of such "sheer technicality" that they carry with them no potential for unfair prejudice are rare, but they have occurred (see People v Fondal, 154 AD2d 476, 477 [2d Dept 1989], lv denied 75 NY2d 770 [1989] [violation of best evidence rule by admitting copy of videotape in different format from the original recording]; People v Mortillaro, 143 AD2d 148, 149 [2d Dept 1988], lv denied 73 NY2d 788 [1988] [any minimal prejudice resulting from preclusion of redirect questioning related to the defendant's alleged motive for murder was neutralized by defense counsel's summation]; People v Lyons, 125 AD2d 593, 595 [2d Dept 1986], lv denied 69 NY2d 952 [1987] [erroneous admission of statement obtained in violation of the defendant's Miranda rights could not be deemed prejudicial, as the statement was exculpatory]).
The constitutional error of failing to suppress cell phone data that was obtained without probable cause, considered in the abstract, is admittedly difficult to categorize as a technical error. Nevertheless, in the unusual circumstances presented here, and as there is no reasonable possibility whatsoever that the verdict was affected, we believe that the error was "based on the 'sheerest technicality,' and hence [cannot] be deemed prejudicial" (People v Lyons, 125 AD2d at 595, quoting People v Crimmins, 36 NY2d at 241). Further, we believe that it is consistent with the purpose of "wise balancing, in the context of the individual case, of the competing interests of the defendant and those of the People" (People v Crimmins, 36 NY2d at 241) to consider that lack of prejudice in conjunction with the weight and quality of the other proof, without requiring a preliminary determination that the other proof was overwhelming. Accordingly, we find that the error was plainly harmless, and we thus concur that the judgment should be affirmed.
Mulvey, J., concurs.
Colangelo, J. (dissenting).
I respectfully dissent. As more fully described in the opinions of my colleagues, defendant was convicted of an assault upon the victim that allegedly took place in an area located a few blocks from the home of defendant's mother. The victim and the victim's friend, through their testimony, placed defendant at the scene. Defendant adduced testimony from alibi witnesses that he was visiting his mother at the time of the alleged attack. Supreme Court admitted into evidence cell phone location data derived from defendant's cell phone that placed defendant's cell phone — and presumably defendant — within an area that included the site of the alleged attack. That same general location data included within its geographic scope the location of the home of defendant's mother, where he claimed to be during the alleged attack.
The decisions of my colleagues either assume without deciding (the majority) or conclude as I do (the concurrence) that Supreme Court erred in denying defendant's pretrial motion to suppress defendant's cell phone location data, and in admitting such data at trial. They also conclude that such error, actual or presumed, was harmless, but for different reasons. In essence, the majority applies the longstanding New York test of first assessing whether the evidence adduced at trial was overwhelming in favor of conviction, concludes that it was, and therefore the admission of the cell phone location data was harmless since it could not have influenced the result of the trial. The concurrence disagrees with the finding that the evidence of guilt was overwhelming, but finds the error of admitting the cell phone location data nonetheless harmless; the concurrence maintains that, since its effect was to favor, or disfavor, the contentions of each side equally, this is one of the exceedingly rare cases where, despite the absence of overwhelming evidence of guilt, the admission of tainted evidence, however misguided, was, in the words of the leading Court of Appeals case of People v Crimmins (36 NY2d 230, 242 [1975]), nothing more than the "sheerest technicality." Because I believe that the other evidence of defendant's guilt was not overwhelming, and the effect of admitting the cell phone location data not necessarily neutral, I dissent and would reverse the judgment of conviction.
Initially, I agree with the assessment in the concurring opinion that proof of defendant's guilt was not overwhelming — i.e., the lack of physical evidence placing defendant at the scene and the evasive testimony of the People's witness, along with the testimony of defendant's alibi witnesses to the effect that defendant was not at the scene, but was visiting his mother at her house a short distance away. I disagree, however, that the improper admission of the cell phone location data qualifies as the "sheerest technicality" (id.) and was therefore harmless error, as urged in the concurrence.
Although the cell phone location data was consistent with placing defendant at either the alleged crime scene, as the People contended, or at his mother's house, as defendant's alibi witnesses testified, its admission was not neutral when evaluated in the criminal trial context. The cell phone location data likely enhanced the People's case by providing a scientific/technological verification for their theory of the case and the testimony of their witnesses, who contradicted defendant's alibi. Absent such location data, the trial may well have devolved into a pure swearing contest between the alleged victim and his friend on the one hand and defendant's alibi witnesses on the other, with the outcome beyond our power to now reconstruct. Whether the jury used the tainted evidence in the People's favor cannot be ascertained; the fact that such evidence was, due to Supreme Court's error, available for the jury to use renders the error in admitting it not harmless. By offering scientific support for the People's case, the practical effect of its admission was, thus, not neutral, and the court's error in allowing it is more than the "sheerest technicality" (id.).
In addition, whether that scientific evidence may have also supported, in equal measure, defendant's alibi position is of no moment. Even if, as a purely logical matter, a rational person might weigh such evidence equally, that alone is insufficient to make its mistaken admission the "sheerest technicality" (id.) in the context of this criminal case, where, as distinguished from a civil trial, the proof is not measured by the slight deviation from equipoise of an apothecary's scale. In a criminal matter, the People must meet the higher standard of proof beyond a reasonable doubt. Perhaps, as courts have suggested, it is this fundamental premise, together with our inability to divine or recreate the thought processes of 12 jurors, that undergirds the longstanding, and rarely deviated from, overwhelming evidence rule (see People v Mairena, ___ NY3d ___, ___, 2019 NY Slip Op 08978, *5 [2019]; People v Crimmins, 36 NY2d at 240-242). In short, by providing a scientific basis for the jury to decide that the People's witnesses were worthy of belief and defendant's alibi witnesses were not, Supreme Court's error in admitting the cell phone location data was not harmless, and the remedy should be a new trial.
ORDERED that the judgment is affirmed, and matter remitted to the Supreme Court for further proceedings pursuant to CPL 460.50 (5).



Footnotes

Footnote 1: The People also introduced text messages between defendant and the victim wherein defendant made similar threats.

Footnote 2: Defendant owned several properties in this area.

Footnote 3: The victim's friend, who was with the victim at the time of the attack, similarly testified to the account provided by the victim and also identified defendant as the assailant when the bandana fell from his face. When asked whether he was sure it was defendant, the victim's friend responded, "A hundred percent sure, yes."

Footnote 4: Contrary to defendant's assertion, the People were not required to show that defendant caused or intended to cause a serious physical injury as defined by Penal Law § 10.00 (10), given that it is not an element of either attempted assault in the first degree (see Penal Law §§ 110.00, 120.10 [2]) or assault in the second degree (see Penal Law § 120.05 [2]) as charged in the indictment.

Footnote 5: Defendant also asserts that the warrant was overbroad. At the hearing, however, defendant noted that the only issue that was raised in his suppression motion was whether probable cause existed for the issuance of the search warrant. As such, this assertion is unpreserved given that it is being raised for the first time on appeal (see People v Johnson, 172 AD3d 1628, 1633 [2019], lv denied 34 NY3d 951 [2019]).

Footnote 6: We express no opinion on the concurrence's invitation to expand or clarify the harmless error analysis. We also note that neither the People nor defendant has argued for any change to such analysis.

Footnote 7: We also note that, during his entire summation, the prosecutor did not rely heavily on the cell site location information derived from defendant's cell phone and made, at most, two cursory references about such evidence in challenging defendant's alibi.