People v Jones (2023 NY Slip Op 00004)

People v Jones

2023 NY Slip Op 00004

Decided on January 5, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 5, 2023

110924
[*1]The People of the State of New York, Respondent,
v
Lawrence Jones, Appellant.

Calendar Date:November 15, 2022

Before:Aarons, J.P., Pritzker, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

John A. Cirando, Syracuse, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Philip A. Alvaro of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the County Court of Chemung County (Christopher P. Baker, J.), rendered October 15, 2018, upon a verdict convicting defendant of the crimes of promoting prison contraband in the first degree and assault in the second degree (two counts).
Defendant, an incarcerated individual, was charged by indictment with one count of promoting prison contraband in the first degree and two counts of assault in the second degree stemming from a fight with another incarcerated individual (hereinafter the victim) that occurred in July 2017 at Elmira Correctional Facility. Following a jury trial, defendant was found guilty as charged and was thereafter sentenced, as a second felony offender, to a prison term of 3½ to 7 years on the prison contraband conviction and concurrent prison terms of seven years followed by five years of postrelease supervision on each of the assault convictions. Defendant appeals.
Defendant contends that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence because no weapon was recovered. As is relevant here, to establish promoting prison contraband in the first degree, the People were required to prove that defendant, "[b]eing a person confined in a detention facility, . . . knowingly and unlawfully ma[de], obtain[ed] or possesse[d] any dangerous contraband" (Penal Law § 205.25 [2]). "Contraband" is defined as "any article or thing which a person confined in a detention facility is prohibited from obtaining or possessing by statute, rule, regulation or order," and "[d]angerous contraband" is defined as "contraband which is capable of such use as may endanger the safety or security of a detention facility or any person therein" (Penal Law § 205.00 [3], [4]). Additionally, as relevant here, to establish assault in the second degree the People were required to prove that defendant, "[w]ith intent to cause physical injury to another person, . . . cause[d] such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; [and] . . . [h]aving been charged with or convicted of a crime and while confined in a correctional facility . . . pursuant to such charge or conviction,[FN1] with intent to cause physical injury to another person, he cause[d] such injury to such person" (Penal Law § 120.05 [2], [7]).
At trial, Kyle Ramirez, a correction officer, testified that, on the night of the incident, he was in the yard supervising recreational time when he observed defendant making slashing motions toward the victim. Upon observing this, he began running toward the pair to get them on the ground, at which point he saw defendant and the victim throwing punches at each other. Although there were about 15 or 20 incarcerated individuals in the general vicinity of the incident, Ramirez stated that none of them were within arm's length of defendant or the victim. Ramirez stated that after defendant and the victim separated, he was searching the victim [*2]and noticed that there was a large cut on the side of his face, running from above his ear to his jawbone.[FN2] The victim was then escorted out of the yard for medical treatment. A nurse at the correctional facility testified that she was working in the infirmary at the time of the incident and treated the victim upon his arrival. According to her, the victim had a laceration on the left side of his face and was bleeding seriously enough that he had to be sent to the hospital.
Ramirez denied having observed anything in defendant's hand when he made the slashing motion and explained that, despite defendant and the victim being searched, no weapon was recovered. Testimony from another correction officer who was present revealed that the victim did not have physical contact with anyone else after the fight with defendant. The evidence also established that all of the other incarcerated individuals in the yard went through a metal detector and no weapons were found.[FN3] Finally, the testimony at trial revealed that no weapon was found during a search of the prison yard. A sergeant with 19 years of experience testified that it is common for a weapon not to be recovered after a fight when someone is cut and that, in his experience, the victim's injury was not caused by a fingernail or a punch. He also testified that when incarcerated individuals arrive at the facility, they are given a book containing the rules of conduct with which they are expected to comply, which includes a rule requiring that they do not possess any instrument capable of causing bodily harm. A copy of this rule book was presented and admitted as evidence, as was a copy of defendant's signed acknowledgment of receiving a copy of these rules.
The victim testified for the defense and stated that he was cut from behind, and that, at the time he was cut, defendant was somewhere in front of him. He explained that after he was slashed, he immediately began fighting anyone around him, including defendant and a "couple" other incarcerated individuals whose names he could not remember. He testified that defendant was not the person who slashed him, and also said that he could not remember if defendant was one of the people he was fighting. As a rebuttal witness, Ramirez testified that incarcerated individuals generally do not disclose the identity of those who injure them in fights for fear of repercussions.
Based on the foregoing, when construing the evidence in the light most favorable to the People, a rational person could conclude that, although a weapon was not found, defendant possessed a weapon, in violation of correction facility rules, and intentionally used it to cause physical injury to the victim (see People v Johnson, 24 AD3d 803, 804 [3d Dept 2005]; People v Reynolds, 283 AD2d 771, 773 [3d Dept 2001], lv denied 96 NY2d 866 [2001]).[FN4] The testimony by Ramirez that he saw defendant making a slashing motion while fighting with the victim, as well as testimony that no other incarcerated [*3]individual was within arm's reach of the victim, and the photographs of the long laceration on the side of the victim's face after correction officers broke up the fight, provided strong circumstantial evidence that defendant possessed a dangerous weapon and used it to intentionally physically injure the victim by cutting the side of his face (see People v Killings, 159 AD3d 1398, 1399 [4th Dept 2018], lv denied 31 NY3d 1083 [2018]; see generally People v Slivienski, 204 AD3d 1228, 1234-1235 [3d Dept 2022], lv denied 38 NY3d 1136 [2022]; People v Johnson, 107 AD3d 1161, 1162 [3d Dept 2013], lv denied 21 NY3d 1075 [2013]). Turning to the weight of the evidence, although a different verdict would not have been unreasonable given that a weapon was never recovered and the victim's testimony that someone other than defendant cut him, "when viewing all of the evidence in a neutral light and deferring to the jury's credibility determinations, we find that the weight of the credible evidence supports the conclusion that defendant" possessed a weapon with which he intentionally caused physical injury to the victim (People v Slivienski, 204 AD3d at 1235; see People v Robinson, 183 AD3d 1118, 1122 [3d Dept 2020], lv denied 35 NY3d 1069 [2020]; People v Killings, 159 AD3d at 1399). Notably, "the jury was free to reject [the contrary evidence and testimony] and credit the testimony given by the People's witnesses" (People v Bush, 184 AD3d 1003, 1006 [3d Dept 2020], lv denied 35 NY3d 1093 [2020]; see People v Perez, 183 AD3d 934, 935 [3d Dept 2020], affd 36 NY3d 1093 [2021]).
Finally, we are unpersuaded by defendant's claim that his sentence is harsh and excessive and decline defendant's invitation to modify the sentence (see People v Smith, 206 AD3d 1058, 1063 [3d Dept 2022]; see generally People v Brisman, 200 AD3d 1219, 1222 [3d Dept 2021], lv denied 37 NY3d 1159 [2022]).
Aarons, J.P., Reynolds Fitzgerald, Ceresia and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: By way of a special information, defendant admitted, outside the presence of the jury, to having been convicted of kidnapping in the second degree and, as a result of this conviction, he was confined to Elmira Correctional Facility at the time of the incident (see CPL 200.60 [2], [3] [a]; People v Reynolds, 283 AD2d 771, 771-772 [3d Dept 2001], lv denied 96 NY2d 866 [2001]). Thus, the People were not required to prove these elements (see id.).

Footnote 2: Photographs of the laceration were admitted into evidence and published to the jury.
Footnote 3: It was also explained that some weapons are made from ceramic materials and evade metal detectors.

Footnote 4: Defendant argues that, "while not presented as evidence at trial," this Court should consider that he was found not guilty of assault against another inmate and possession of a weapon after a prison disciplinary hearing. However, in determining whether a verdict is supported by legally sufficient evidence, this Court reviews only the evidence that was before the jury (see People v Hall, 57 AD3d 1229, 1230 [3d Dept 2008], lv denied 12 NY3d 784 [2009]).