People v Robinson (2020 NY Slip Op 02950)





People v Robinson


2020 NY Slip Op 02950


Decided on May 21, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 21, 2020

110135

[*1]The People of the State of New York, Respondent,
v
Kendale Robinson, Appellant.

Calendar Date: March 24, 2020

Before: Garry, P.J., Egan Jr., Lynch, Aarons and Reynolds Fitzgerald, JJ.


G. Scott Walling, Slingerlands, for appellant, and appellant pro se.
J. Anthony Jordan, District Attorney, Fort Edward (Devin J. Anderson of counsel), for respondent.



Garry, P.J.
Appeal from a judgment of the County Court of Washington County (McKeighan, J.), rendered December 15, 2017, upon a verdict convicting defendant of the crime of promoting prison contraband in the first degree.
In August 2016, defendant was an inmate at Great Meadow Correctional Facility in Washington County serving a life sentence without parole after being convicted of murder in the first degree. While walking out to the prison's recreational yard, defendant allegedly set off the metal detector and was ordered by correction officers to sit in a device used to scan for metal objects on or inside a body. While being scanned, he was questioned by a correction officer. Defendant then allegedly swallowed an unknown object that he was holding in his mouth and became involved in an altercation with the correction officer. Per prison policy, defendant was placed on contraband watch, in which he was placed in a modified cell for constant observation. On the fourth day of the contraband watch, defendant allegedly passed out of his body a scalpel-type instrument wrapped in plastic. The instrument was confiscated by one of the correction officers who had been monitoring defendant. Defendant was thereafter charged with promoting prison contraband in the first degree. Following a jury trial, defendant was found guilty as charged and thereafter sentenced, as a second felony offender, to a prison term of 3½ to 7 years to run consecutively to the sentence he was then serving, as well as a monetary penalty. Defendant appeals.
Defendant contends that the evidence was legally insufficient to prove his guilt, and that the verdict was against the weight of evidence, as the People failed to establish that the scalpel was "dangerous contraband" (Penal Law § 205.25 [2]) or that he had possessed the scalpel, and that the testimony of the correction officer monitoring defendant on the contraband watch was unreliable and should not have been credited. At the close of the People's proof, defendant moved to dismiss, alleging that the People had "fail[ed] to make a prima facie case of the elements against [defendant] based on the testimony that was given." County Court denied that motion. As this motion was not "specifically directed at the error being urged" (People v Hawkins, 11 NY3d 484, 492 [2008] [internal quotation marks and citation omitted]; see People v Gray, 86 NY2d 10, 19 [1995]) and defendant did not renew this motion prior to summations (see People v Valverde, 122 AD3d 1074, 1075 [2014], lv denied 27 NY3d 970 [2016]), defendant's legal sufficiency challenge is unpreserved. However, there is no preservation requirement as to defendant's weight of the evidence challenge, and this claim "requires consideration of the adequacy of the evidence as to each element of the crime[]"(People v Delbrey, 179 AD3d 1292, 1293-1293 [2020] [internal quotation marks and citation omitted]; see People v Silcox-Mix, 159 AD3d 1060, 1060 [2018]).
A correction officer (hereinafter the CO) testified that he was present when defendant set off the metal detectors on his way to the recreational yard, thus indicating that defendant "had metal on him." The CO ordered defendant to sit in the scanning device and, while attempting to speak to defendant, he noticed something in defendant's mouth. The CO stated that when he asked defendant what it was, defendant swallowed the item and "pushed [the CO] out of the way, at which time force became necessary." On cross-examination, the CO stated that he "could see black" in defendant's mouth, and believed it was contraband because defendant swallowed the item. A sergeant who responded to the incident also testified. Upon arriving at the foyer adjoining the recreational yard, the sergeant saw defendant in "mechanical restraints." The sergeant thereafter escorted defendant to the facility hospital, and later to an area used for contraband watch. Prior to placing defendant in the modified cell, the sergeant watched as the area was searched for contraband, and defendant was also searched again for contraband prior to placing him in the cell; no contraband was found.
A second CO testified that he monitored defendant on contraband watch. The second CO described the facility's procedures for contraband watch, including logging defendant's activities in the cell and searching his waste for contraband. He testified that, as per facility procedure, he called his supervisor prior to searching for contraband. The second CO stated that, on the date defendant passed the scalpel and upon receiving the pan of waste from defendant, he was able to view "something foreign almost immediately" and that the object, which was "about an inch and a quarter, inch and a half long," was wrapped in plastic. With the supervisor present, he opened the plastic and found "a scalpel type blade." The object appeared to be made of a "stainless material type," and electrical tape was wrapped "around one end" of the object, acting as "a sheath or a cover" over the blade. This item was admitted into evidence. The second CO further testified that such an item was considered to be dangerous contraband, as it could "cut somebody pretty deeply." On cross-examination, the second CO stated that he was "out of eyesight" but in "the same general area" as defendant when he found the contraband, approximately four cells from where defendant was being held.
The supervisor was called by defendant to testify and stated that the second CO performed the contraband search in a cell near defendant, while the supervisor kept a "visual" of defendant. In contrast to the second CO's testimony, the supervisor stated that he did not see anything unusual in defendant's waste prior to the search; on cross-examination, the supervisor indicated that the second CO showed him the contraband after cleaning the item. He also stated that the type of scalpel blade found is used by the prison's medical facility, and that, per facility policy, the medical facility conducted an inventory of the blades. No such blade was missing.
Defendant testified that the metal detector never went off, but rather that he was told by the CO "to come over to the wall to get pat-frisked." After being pat-frisked, he was told to sit in the scanning device, and he was asked questions, such as his name and cell location. Defendant attempted to walk away, but was told to stop. The CO then told him to open his mouth, which defendant indicated is "not part of a pat-frisk," and then the CO began to choke him, causing defendant to "push [the CO] off." Defendant said that several officers then punched and kicked him while he was lying on the floor. Defendant offered photos of his face, taken in the prison's medical facility after the altercation, which he stated demonstrated "swelling" and a "speed knot," and further stated that he told a nurse about pain in his face and hand. Defendant denied swallowing contraband. On cross-examination, defendant acknowledged that he did not report — either with the facility or an agency outside the facility — having allegedly been choked by the CO.
Had the jury credited defendant's account of events and the evidence he presented, a different verdict would not have been unreasonable; accordingly, this Court must, like the trier of fact below, "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Callender, 48 AD3d 976, 977 [2008] [internal quotation marks and citations omitted], lv denied 10 NY3d 860 [2008]; see generally People v Bleakey, 69 NY2d 490, 495 [1987]). Defendant contends that the People failed to prove two elements of the charged crime — that defendant possessed the scalpel and that the scalpel was dangerous, specifically in that it was sharp or capable of cutting (see Penal Law § 205.25 [2]). However, the jury could reasonably have concluded that defendant possessed the scalpel, given the extensive testimony of both the supervisor and the second CO describing the facility's procedures for contraband watch and the details of defendant's specific contraband watch (see People v Bryson, 150 AD3d 1406, 1407 [2017]; People v Carter, 90 AD3d 1159, 1160 [2011]). The determination whether contraband is dangerous rests on whether "there is a substantial probability that the item will be used in a manner that is likely to cause death or other serious injury, to facilitate an escape, or to bring about other major threats to a detention facility[]" (People v Finley, 10 NY3d 647, 657 [2008]; see People v Green, 119 AD3d 23, 26 [2014], lv denied 23 NY3d 1062 [2014]; see also Penal Law § 205.00 [4]).
The jury, upon viewing the item in evidence, could reasonably have found that the testimony about its dangerousness was accurate; in any event, even an item unable to render harm has been considered to be dangerous contraband (see People v Silcox-Mix, 159 AD3d at 1061 [a fabricated "soap gun" made from bars of soap, notebook paper and carbon paper "would likely have led to the use of deadly force to protect against the apparent threat posed by the presence of a gun"]; People v Carralero, 9 AD3d 790, 791 [2004], lv denied 4 NY3d 742 [2004]). Moreover, we find no merit in defendant's contentions that the inconsistencies in the testimony of the supervisor and the second CO were so significant as to require that the verdict be set aside, particularly as "such inconsistencies were highlighted to the jury," thus allowing it to render a determination as to witness credibility (People v Carter, 90 AD3d at 1160; see People v Breedlove, 61 AD3d 1120, 1121 [2009], lv denied 12 NY3d 913 [2009]; People v Gilliam, 36 AD3d 1151, 1152 [2007], lv denied 8 NY3d 946 [2007]). "Evaluating the evidence in a neutral light and extending the appropriate deference to the jury's superior opportunity to assess the witnesses' credibility, we do not find that the verdict was contrary to the weight of [the] evidence" (People v Gilliam, 36 AD3d at 1152-1153; see People v Bleakley, 69 NY2d at 495).
Defendant's contention that County Court erred by not permitting the jury to consider the lesser included offense of promoting prison contraband in the second degree is unpreserved for appellate review, as defendant only moved to include the offense of attempted possession of prison contraband (see People v Osario, 49 AD3d 562, 563 [2008], lv denied 11 NY3d 834 [2008]). [FN1] Defendant's further arguments that certain statements made by the prosecutor during summation constituted prosecutorial misconduct are also unpreserved, but we will address these claims in the context of defendant's assertion that his counsel provided ineffective assistance due to the failure to object to these statements. Upon review, we find that the challenged statements either responded to defendant's attack on the credibility of the People's witnesses or constituted a fair comment on the evidence, and thus were not improper (see People v Nunes, 168 AD3d 1187, 1193 [2019], lv denied 33 NY3d 979 [2019]).
Defendant further avers that he received ineffective assistance of counsel as his counsel failed to object to an in-court identification of defendant by the second CO, which was not offered in the People's CPL 710.30 notice. This identification did not arise through police-arranged identifications, but rather was based upon the second CO's identification of defendant as the individual whom he had monitored on contraband watch over the course of several days and observed passing the contraband. We thus find no error (see People v Anderson, 149 AD3d 1407, 1410 [2017], lv denied 30 NY3d 947 [2017]; People v Butler, 16 AD3d 915, 916 [2005], lv denied 5 NY3d 786 [2005]; see also CPL 710.30 [1] [a], [b]). The record reveals that counsel conducted opening and closing statements, moved to dismiss the charge, attempted to get instructions on a lesser included charge, conducted cross-examination of the People's witnesses and presented testimony on defendant's behalf. As such, defendant received meaningful representation (see People v Mamadou, 172 AD3d 1524, 1526 [2019], lv denied 33 NY3d 1106 [2019]).
Egan Jr., Lynch, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: In any event, defendant's claims as to the lesser included charge are without merit. Promoting prison contraband in the first degree requires proof of "dangerous contraband" (Penal Law § 205.25 [2]), while the second degree charge only requires proof of "any contraband" (Penal Law § 205.20 [2]). No reasonable view of the evidence supports the claim that the scalpel-type blade was contraband, but not dangerous contraband (see People v Carralero, 9 AD3d at 791).