People v Barzee (2021 NY Slip Op 00052)





People v Barzee


2021 NY Slip Op 00052


Decided on January 7, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 7, 2021

110076

[*1]The People of the State of New York, Respondent,
v
Saio Barzee, Appellant.

Calendar Date: November 23, 2020

Before: Garry, P.J, Egan Jr., Mulvey and Colangelo, JJ.


Brian M. Quinn, Albany, for appellant.
Andrew J. Wylie, District Attorney, Plattsburgh (Rebecca L. Fox of counsel), for respondent.



Colangelo, J.
Appeal from a judgment of the County Court of Clinton County (Bruno, J.), rendered July 17, 2017, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the third degree and promoting prison contraband in the first degree.
Defendant, an inmate at Clinton Correctional Facility, was charged by indictment with criminal possession of a weapon in the third degree and promoting prison contraband in the first degree. The charges stemmed from allegations that, during a random pat frisk of defendant, a plexiglass shank fell out of his left pant leg. At the conclusion of a jury trial, defendant was found guilty as charged. Defendant was ultimately sentenced to concurrent prison terms of 3 to 6 years for each conviction, to be served consecutively to his current term of incarceration. Defendant appeals, and we affirm.
Initially, defendant contends that his convictions were not supported by legally sufficient evidence and were against the weight of the evidence. "Inasmuch as [defendant's] motion for a trial order of dismissal was not directed at the specific arguments that he raises on appeal, defendant's legal insufficiency claim is unpreserved" (People v Bombard, 187 AD3d 1417, 1417 [2020] [citations omitted]; see People v Gray, 86 NY2d 10, 19-20 [1995]; People v Meadows, 183 AD3d 1016, 1016-1017 [2020], lv denied 35 NY3d 1047 [2020]; People v Shackelton, 177 AD3d 1163, 1165 [2019], lv denied 34 NY3d 1162 [2020]; People v Youngs, 175 AD3d 1604, 1606 [2019]). "Nevertheless, in reviewing defendant's challenge to the weight of the evidence, we necessarily determine whether all of the elements of the charged crimes were proven beyond a reasonable doubt" (People v Bombard, 187 AD3d at 1417-1418 [internal quotation marks, brackets and citations omitted]; see People v Brinkley, 174 AD3d 1159, 1160 [2019], lv denied 34 NY3d 979 [2019]). "In conducting a weight of the evidence review, we must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Bombard, 187 AD3d at 1418 [internal quotation marks and citations omitted]; see People v Bleakley, 69 NY2d 490, 495 [1987]; People v Brinkley, 174 AD3d at 1160).
As relevant here, "[a] person is guilty of criminal possession of a weapon in the third degree when . . . [s]uch person commits the crime of criminal possession of a weapon in the fourth degree . . . and has been previously convicted of any crime" (Penal Law § 265.02 [1]). [FN1] "A person is guilty of promoting prison contraband in the first degree when[,] . . . [b]eing a person confined in a detention facility, he [or she] knowingly and unlawfully makes, obtains or possesses any dangerous contraband" (Penal Law § 205.25 [2]). [*2]"Contraband" is defined as "any article or thing which a person in a detention facility is prohibited from obtaining or possessing by statute, rule, regulation or order" (Penal Law § 205.00 [3]), whereas "[d]angerous contraband" is defined as "contraband which is capable of such use as may endanger the safety or security of a detention facility or any person therein" (Penal Law § 205.00 [4]; see People v Andrade, 172 AD3d 1547, 1549 [2019], lvs denied 34 NY3d 928, 937 [2019]).
At trial, Matthew Moak, a correction officer, testified that a plexiglass shank fell from defendant's left pant leg during a random pat frisk. Andrew Burgess, a correction sergeant, testified that he witnessed the plexiglass shank fall from defendant's left pant leg. Defendant was then escorted by Moak and Burgess to the hospital and searched again. No other contraband was recovered. The plexiglass shank, which had been retrieved and secured by Moak, was photographed in black and white, and, at trial, both the photograph and the plexiglass shank were identified by Moak and Burgess, introduced into evidence and published to the jury without objection. The testimony further established that defendant's identity was ascertained by the state-issued identification card found on his person.
Moak testified that a plexiglass shank such as the one recovered from defendant poses a security risk to individuals inside of the facility and has been used to cause cuttings, stabbings and death. Moreover, according to Moak, the shank poses an additional security risk because it is detectable only by a pat frisk and would not activate a metal detector. Moak testified that he had no contact with defendant before or after the incident. Burgess testified that according to rules and regulations of the Department of Corrections and Community Supervision, inmates are subject to random pat frisks any time they are in movement, and no suspicion is required before a pat frisk can be conducted. Burgess defined contraband as any item that an inmate should not have within his or her possession or in his or her cell at any time, and he explained that dangerous contraband is any object that would readily cause physical harm against another. According to Burgess, while not all contraband is considered dangerous, the plexiglass shank recovered from defendant is dangerous contraband since, as a piece of plexiglass sharpened to a point, it is readily able to cause a puncture wound, laceration or serious injury. Burgess testified that the plexiglass shank possessed by defendant is not permitted in the facility under any circumstances, including for an inmate's own protection. Burgess further testified that the plexiglass shank was likely made by defendant from a commissary mirror in his cell.
Defendant testified in narrative form as to the random pat frisk, asserting, among other things, that the shank was not recovered from him. He testified that he has no reason to carry a weapon because "[[*3]his] hands [are] good" and he "box[es] so [he] do[es]n't need . . . weapons." Defendant professed his innocence and testified that he declined a plea offer of 1½ to 3 years because he is innocent. Defendant claimed that the photograph of the shank should have been taken with a digital camera to reflect the date it was taken. On cross-examination, defendant admitted that, in May 2018, he was convicted of a felony.
As to the weight of the evidence, a different verdict would not have been unreasonable as the jury could have credited defendant's testimony that he never possessed the shank. However, when we view the foregoing evidence in a neutral light and accord deference to the jury's credibility determinations, we find that the jury's verdict as to both convictions is supported by the weight of the evidence (see People v Andrade, 172 AD3d at 1551; People v Person, 185 AD3d 1288, 1291-1292 [2020]; People v Robinson, 183 AD3d 1118, 1122 [2020], lv denied 35 NY3d 1069 [2020]). Moreover, contrary to defendant's contention regarding his conviction for criminal possession of a weapon in the third degree, the testimony of Moak and Burgess established defendant's possession of the shank and that it was made primarily for use as a weapon. Thus, once the jury credited the testimony establishing these elements of this crime, "the jury was entitled to infer from such possession that defendant had intended to use the [shank] unlawfully" (People v Pendelton, 90 AD3d 1234, 1235 [2011], lv denied 18 NY3d 996 [2012]; see Penal Law § 265.15 [4]; People v Solomon, 78 AD3d 1426, 1428 [2010], lvs denied 16 NY3d 899, 900 [2011]).
We are similarly unpersuaded by defendant's contention that he was denied a fair trial based upon County Court's denial of his motion to subpoena certain defense witnesses or to order that they be produced at trial. "Although a defendant has a fundamental right to call witnesses for his [or her] own defense, the right to an adjournment for any purpose[] rests within the sound discretion of the trial court" (People v Benson, 260 AD2d 864, 865 [1999] [citations omitted], lvs denied 93 NY2d 966, 977 [1999]; see People v Singleton, 41 NY2d 402, 405 [1977]). "When a defendant seeks an adjournment so that a potential witness can be produced, it is incumbent upon the defendant to demonstrate, among other things, that the witness would furnish testimony that is both material and favorable to the defense" (People v Horton, 181 AD3d 986, 994 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1045 [2020]). Here, defendant did not establish that additional testimony from Moak and Burgess, as well as the proposed testimony from a correction captain who was neither present nor prepared to testify, would be material or relevant to his defense, and the court therefore acted within its discretion in denying defendant's request for an adjournment (see People v Diggins, 11 NY3d 518, 524 [2008]; People v Horton, 181 AD3d at 994[*4]; People v Booker, 141 AD3d 834, 835 [2016], lv denied 28 NY3d 1026 [2016]).
With regard to defendant's challenge to County Court's instruction that the plexiglass object was a dangerous instrument, defendant failed to object to the instruction during the charging conference or after the instruction was given to the jury so as to preserve said claim for our review (see CPL 470.05 [2]; People v Houze, 177 AD3d 1184, 1188 [2019], lv denied 34 NY3d 1159 [2020]; People v Heiserman, 127 AD3d 1422, 1424-1425 [2015]).
We reject defendant's contentions that his counsel was ineffective and that County Court improperly denied his request for substitution of counsel. Defendant contends that, because his counsel failed to make certain motions, including a motion to suppress the shank, and failed to provide him with certain papers he was forced to represent himself. "To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate that he or she was not provided meaningful representation and that there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Santana, 179 AD3d 1299, 1302 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 973 [2020]). "[T]here can be no denial of effective assistance of [defense] counsel arising from counsel's failure to make a motion or argument that has little or no chance of success" (People v Caban, 5 NY3d 143, 152 [2005] [internal quotation marks and citation omitted]; see People v Kelsey, 174 AD3d 962, 965 [2019], lv denied 34 NY3d 982 [2019]; People v Richardson, 162 AD3d 1328, 1332 [2018], lv denied 32 NY3d 1128 [2018]).
The record establishes that defendant's counsel filed motions and made discovery demands on his behalf, provided him with all of the documents received from the People and advocated on his behalf during appearances. It was also established that the pat frisk of defendant was conducted and authorized in accordance with Department of Corrections and Community Supervision Directive No. 4910. As such, we find that defendant has not demonstrated the absence of strategic reasons for defense counsel's conduct or that, had counsel made the motions or taken the actions defendant now points to, there was any likelihood of success (see People v Caban, 5 NY3d at 152; People v Forney, 183 AD3d 1113, 1116 [2020], lv denied 35 NY3d 1065 [2020]; People v Watkins, 180 AD3d 1222, 1223-1234 [2020], lvs denied 35 NY3d 1026, 1030 [2020]). Accordingly, we find that defendant was provided with meaningful representation. We also cannot say that County Court abused its discretion in denying defendant's request for the appointment of new counsel without additional inquiry, as defendant failed to demonstrate good cause for substitution of counsel (see People v Medina, 44 NY2d 199, 207-208 [1978]; People v Graham, 188 AD3d 909, 909-910 [2020]; People v Howard, 119 AD3d 1090, 1091 [2014], lv denied 24 NY3d 961[*5][2014]).
Defendant also contends that the sentence imposed was harsh and excessive. "It is well settled that a sentence that falls within the permissible statutory ranges will not be disturbed unless it can be shown that the sentencing court abused its discretion or that extraordinary circumstances exist warranting a modification in the interest of justice" (People v Simmons, 122 AD3d 1169, 1169 [2014] [internal quotation marks, brackets and citations omitted], lv denied 25 NY3d 1171 [2015]; accord People v Hightower, 186 AD3d 926, 932 [2020], lv denied 35 NY3d 1113 [2020]; see People v Cancer, 185 AD3d 1353, 1354 [2020]). Given defendant's criminal history and the fact that the sentence imposed for his convictions was within the statutory range and less than the maximum allowed, we discern no extraordinary circumstances or an abuse of discretion that would warrant a modification of the sentence.
The remaining arguments in defendant's supplemental pro se brief do not warrant extensive discussion. Defendant's claim that he was deprived of a fair trial based upon various actions of the prosecutor are unpreserved as "defendant failed to raise timely, specific objections to each instance of alleged prosecutorial misconduct" (People v Santiago, 185 AD3d 1151, 1154-155 [2020], lv denied 35 NY3d 1097 [2020]; see People v Fragassi, 178 AD3d 1153, 1156-1157 [2019], lv denied 34 NY3d 1128 [2020]). Contrary to defendant's assertions that he was denied access to Moak's grand jury testimony and to Rosario material, the record reflects that defense counsel acknowledged receipt of this material from the People and provided same to defendant.[FN2] We also reject defendant's contention that the People committed a Brady violation by failing to disclose alleged exculpatory material from a prison disciplinary hearing. The People were not in possession of such material, and the People are under no obligation to locate and gain possession of material from a prison disciplinary hearing for the purpose of turning the material over to the defense, as such an obligation only arises when such material is in the People's possession (see People v Howard, 87 NY2d 940, 941 [1996]; People v McPherson, 170 AD3d 1255, 1257 [2019], lv denied 33 NY3d 1071 [2019]). To the extent that we have not specifically addressed defendant's remaining contentions, they have been examined and found to be without merit.
Garry, P.J., Egan Jr. and Mulvey, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: "A person is guilty of criminal possession of a weapon in the fourth degree when . . . [h]e or she possesses . . . [a] dangerous or deadly instrument or weapon with intent to use the same unlawfully against another" (Penal Law § 265.01 [2]).

Footnote 2: Selected portions of the grand jury minutes are part of the appendix to the brief submitted by defendant's appellate counsel.