People v Brisman (2021 NY Slip Op 06887)





People v Brisman


2021 NY Slip Op 06887


Decided on December 9, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 9, 2021

111493
[*1]The People of the State of New York, Respondent,
v
Jason Brisman, Appellant.

Calendar Date:October 13, 2021

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Colangelo, JJ.

Clea Weiss, Ithaca, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Philip A. Alvaro of counsel), for respondent.



Pritzker, J.
Appeal from a judgment of the County Court of Chemung County (Baker, J.), rendered December 17, 2018, upon a verdict convicting defendant of the crime of promoting prison contraband in the first degree.
Following a jury trial, defendant was convicted of promoting prison contraband in the first degree in connection with his alleged possession of a "1¾ inch long by ¾ inch wide piece of porcelain sharpened on one end." He was then sentenced, as a second felony offender, to a prison term of 3½ to 7 years, to run consecutively with the sentence he was then serving.
Defendant contends that the verdict is not supported by the weight of the evidence. "When undertaking a weight of the evidence review, [this Court] must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence. When conducting this review, we consider the evidence in a neutral light and defer to the jury's credibility assessments" (People v Gill, 168 AD3d 1140, 1140 [2019] [internal quotation marks and citations omitted]). As relevant here, "[a] person is guilty of promoting prison contraband in the first degree when[,] . . . [b]eing a person confined in a detention facility, he [or she] knowingly and unlawfully makes, obtains or possesses any dangerous contraband" (Penal Law § 205.25 [2]). Possession is defined as having physical possession or otherwise exercising dominion or control over tangible property (see Penal Law § 10.00 [8]). Notably, "[c]onstructive possession can be shown when the defendant has a sufficient level of control over the area in which the contraband was found"; however, "[a] defendant's mere presence in the same location as contraband is insufficient to establish constructive possession" (People v Maricle, 158 AD3d 984, 986 [2018] [internal quotation marks and citations omitted]; see e.g. People v Duran, 6 AD3d 809, 811 [2004], lv denied 3 NY3d 639 [2004]). Whether the contraband possessed is dangerous "rests on whether there is a substantial probability that the item will be used in a manner that is likely to cause death or other serious injury, to facilitate an escape, or to bring about other major threats to a detention facility" (People v Robinson, 183 AD3d 1118, 1121-1122 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1069 [2020]).
At trial, Justin Taft testified that he was employed as a correction officer at Elmira Correctional Facility and that, on the day of the incident, he was supervising recreational time in the gym when he observed two incarcerated individuals fighting. Taft asserted that he was about 10 feet away from where the altercation was occurring. According to Taft, defendant had been "making slashing-type motions" toward another [*2]incarcerated individual, which Taft further described as a "side to side" motion — rather than the back-and-forth motion associated with fist punches. In response, the other incarcerated individual punched defendant, which caused defendant to fall to the ground. Taft secured defendant with mechanical restraints and observed that defendant had an abrasion on his forehead and a cut on his hand; the other incarcerated individual had a laceration on his upper left cheek that was bleeding. Taft then frisked defendant and did not find any contraband directly near or on his person.
Ivan McKeever, another correction officer, testified and affirmed that he was present in the gym at the time of the incident and he recalled that defendant and another incarcerated individual had gotten into an altercation "[p]retty much immediately" after recreational time commenced. McKeever stated that he primarily observed the other incarcerated individual involved in the altercation and recalled frisking and restraining that individual; McKeever did not locate any contraband on that incarcerated individual's person. He asserted that he observed both defendant and the other incarcerated individual exchange closed fist punches and "[s]wiping at each other" and that both men had been "using motions that are equivalent" to slashing.
Gordon Simpson, another correction officer at the facility, testified that he was tasked with responding to any altercation. He recalled that he had arrived at the yard about a minute or two after the altercation had occurred and observed that the two involved incarcerated individuals had been restrained. Thereafter, while conducting a search of the area, Simpson found a "weapon laying next to one of the [incarcerated individuals]" in the corner of the gym yard; he stated that the contraband was found "[w]ithin arm's distance" of defendant. Simpson described the contraband as a sharp piece of porcelain that had blood on it; however, he could not recall whether the blood on the contraband was wet or dry at the time he recovered it. Simpson confirmed that the facility's behavior rule book prohibited "any item that may be classified as a weapon or dangerous instrument by description, use[] or appearance," as well as "any authorized item that has been altered in any manner so as to change its original intent or purpose." Simpson opined that the recovered contraband would be prohibited under the aforementioned rules because "it's a weapon, it's altered." He stated that even a small weapon can cause injury in the form of three-to-four-inch cuts that could require 15 to 20 stitches. A registered nurse at the facility testified that she had examined defendant and the other incarcerated individual who had been involved in the altercation and that defendant presented with abrasions above his left eyebrow and to the back side of his head, as well as a laceration on his right forefinger; the other incarcerated individual presented with a "scratch[*3]" to his left cheek and abrasions on his lip. McKernan distinguished an abrasion — which occurs when the top layer of skin gets brushed off — from a laceration, which is a disruption of tissue and results in clean lines.
Given that the jury could have reasonably found that defendant did not possess the contraband due to the fact that no one saw him holding or using the contraband, a different verdict would not have been unreasonable. Thus, we "must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Robinson, 183 AD3d at 1121 [internal quotation marks and citations omitted]; see People v Baber, 182 AD3d 794, 799 [2020], lv denied 35 NY3d 1064 [2020]). Based upon the testimony from the correction officers regarding the altercation and defendant's participation therein, which directly preceded the recovery of the subject contraband, along with the medical evidence of a laceration to defendant's hand, we find that the jury reasonably could have concluded that defendant possessed the contraband and that defendant had used such contraband during the altercation (see People v Robinson, 183 AD3d at 1121). Contrary to defendant's contention, any inconsistencies in the testimony given by the correction officers were not so significant as to require the verdict to be set aside. Moreover, "'such inconsistencies were highlighted to the jury,' thus allowing it to render a determination as to witness credibility'" (id., quoting People v Carter, 90 AD3d 1159, 1160 [2011]). Turning to whether the subject contraband was dangerous, the jury, upon viewing the item in evidence, could reasonably have found that the testimony about its dangerousness was accurate. Furthermore, it has been observed that "even an item unable to render harm" can be considered dangerous contraband within the meaning of the Penal Law (People v Robinson, 183 AD3d at 1122). Accordingly, we find that the verdict is supported by the weight of the evidence (People v Barzee, 190 AD3d 1016, 1019-1020 [2021] [internal quotation marks and citations omitted], lv denied 36 NY3d 1094 [2021]).
Finally, defendant failed to preserve his claim that the sentence imposed served to punish him for exercising his right to a trial (see People v Hurley, 75 NY2d 887, 888 [1990]; People v Baber, 182 AD3d at 803). Although defendant was sentenced to the maximum term, the record reflects that County Court relied on the appropriate factors in imposing defendant's sentence. Thus, we discern "no extraordinary circumstances or abuse of discretion warranting a reduction of the sentence in the interest of justice" (People v Planty, 155 AD3d 1130, 1135 [2017], lv denied 30 NY3d 1118 [2018]; see People v Jones, 139 AD3d 1189, 1191 [2016], lv denied 28 NY3d 932 [2016]).
Egan Jr., J.P., Lynch, Clark and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.