People v Lekovic (2021 NY Slip Op 07585)





People v Lekovic


2021 NY Slip Op 07585


Decided on December 30, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 30, 2021

111744
[*1]The People of the State of New York, Respondent,
v
Almir Lekovic, Appellant.

Calendar Date:November 16, 2021

Before:Garry, P.J., Egan Jr., Lynch, Pritzker and Colangelo, JJ.

Craig Meyerson, Peru, for appellant.
Andrew J. Wylie, District Attorney, Plattsburgh (Vivian Y. Joo of counsel), for respondent.



Pritzker, J.
Appeal from a judgment of the County Court of Clinton County (Favreau, J.), rendered August 16, 2018, convicting defendant following a nonjury trial of the crimes of criminal possession of a weapon in the third degree and promoting prison contraband in the first degree.
Defendant was charged by indictment with one count of criminal possession of a weapon in the third degree and one count of promoting prison contraband in the first degree in connection with his alleged possession of a toothbrush that had been altered into a weapon while he was incarcerated at Clinton Correctional Facility in August 2017. Following a bench trial, defendant was convicted as charged. He was then sentenced, as a second felony offender, to concurrent prison terms of 2½ to 5 years, to run consecutively to the sentence he was then serving. Defendant appeals.
Defendant contends that the verdict was against the weight of the evidence based upon the People's purported failure to prove the element of possession.[FN1] "Inasmuch as a contrary result would not have been unreasonable, our task in conducting a weight of the evidence review is to 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony'" (People v Mamadou, 172 AD3d 1524, 1524 [2019], lv denied 33 NY3d 1106 [2019], quoting People v Myers, 163 AD3d 1152, 1153 [2018], lv denied 32 NY3d 1066 [2018]). A weight of the evidence review requires this Court to view evidence in a neutral light while giving deference to the credibility determinations made by the trier of fact (see People v Hilton, 185 AD3d 1147, 1148 [2020], lv denied 35 NY3d 1095 [2020]; People v Mamadou, 172 AD3d at 1524).
Corey McLeary, a correction officer at the facility, testified that, on the day of the incident, he was assigned to Upper F block when an altercation broke out between defendant and another incarcerated individual. McLeary asserted that he had seen the two men fighting with closed fists and saw defendant making "slashing-type motions"; he averred that the other incarcerated individual's motions were "[f]airly similar but more so like just fighting, closed fists." McLeary reported a level 2 emergency over his radio and monitored the situation until responders arrived. He denied having seen any object in either individual's hands. Kacey Roberts, also a correction officer, testified that when he responded to the incident, both individuals had been lying on the ground and were being handcuffed. Roberts stated that when officers helped defendant to his feet, he observed an altered "plastic, white toothbrush" on the ground that had been concealed underneath defendant. Roberts averred that a sharpened toothbrush would inflict injury in the form of a hole or penetration through the skin and constitutes dangerous contraband. On cross-examination, Roberts confirmed that he had drafted an interdepartmental communication wherein he reported that [*2]he recovered "a weapon from the floor [of] the company in the area of the incident" and that such communication was silent as to his allegation that the contraband was found underneath defendant when he was placed on his feet.
Matthew Moak, a correction officer at the facility, testified that, when he responded to the incident, he was informed that a fight had occurred between defendant and another incarcerated individual. Moak asserted that both individuals were restrained on the ground by the time he arrived. Moak stated that he then escorted the other incarcerated individual to the medical unit because he had been bleeding from one side of his face, which the medical unit determined to be a puncture wound that required sutures. Moak asserted that, on the way to the medical unit, he asked the other incarcerated individual if he had any contraband and the incarcerated individual stated that he had a "scalpel blade weapon in his pocket." Moak searched him and found a ceramic scalpel blade inside of a cardboard sheath in the incarcerated individual's pocket. Moak averred that the puncture wound on the other incarcerated individual's face was neither consistent with a fist nor with a scalpel blade. On cross-examination, Moak conceded that he had not seen any contraband in defendant's hand or near the ground where defendant had been restrained.
For his part, defendant testified that, on the day of the incident, he had been party to "a fist fight" with another incarcerated individual. Defendant asserted that the sharpened toothbrush "was nowhere near [him]" and denied having possessed the contraband at any point during the altercation. On cross-examination, defendant confirmed that he had previously been convicted of a felony.[FN2]
Viewing the evidence in a neutral light, we find that the factfinder could rationally infer that defendant possessed a weapon during the altercation with the other incarcerated individual (see People v Robinson, 183 AD3d 1118, 1121 [2020]; People v Mamadou, 172 AD3d at 1525, lv denied 35 NY3d 1069 [2020]). Although no witness testified to having seen defendant holding or utilizing the sharpened toothbrush, "[c]onstructive possession can be shown when the defendant has a sufficient level of control over the area in which the contraband was found" (People v Maricle, 158 AD3d 984, 986 [2018] [internal quotation marks and citations omitted]; see e.g. People v Duran, 6 AD3d 809, 811 [2004], lv denied 3 NY3d 639 [2004]). Despite defendant's testimony that the sharpened toothbrush was nowhere near him and that he did not use it during the altercation, Roberts testified to the contrary, stating that defendant had the sharpened toothbrush concealed underneath him. Additionally, McLeary testified that defendant, while engaged in the altercation, was making "slashing-type motions." "[T]his presented a credibility determination for the [factfinder's] resolution, and the [factfinder] was free to reject defendant's version [*3]of the events" (People v Mamadou, 172 AD3d at 1525). Moreover, the purported inconsistency between Robert's testimony and the interdepartmental communication — namely, that Robert's written report did not indicate that the contraband was found in the vicinity of defendant — was not so significant as to require the verdict to be set aside, and defendant highlighted this point to the factfinder during Robert's cross-examination, "thus allowing [the factfinder] to render a determination as to witness credibility" (People v Robinson, 183 AD3d at 1122 [internal quotation marks and citations omitted]). Turning lastly to whether the subject contraband was dangerous, the factfinder could reasonably have found that the testimony about its dangerousness was accurate. Moreover, it has been observed that "even an item unable to render harm" can be considered dangerous contraband within the meaning of the Penal Law (id. at 1122). Accordingly, the verdict is supported by the weight of the evidence (see People v Barzee, 190 AD3d 1016, 1019-1020 [2021], lv denied 36 NY3d 1094 [2021]).[FN3]
Defendant also contends that he was denied the right to the effective assistance of counsel based upon several alleged failings. "To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate that he or she was not provided meaningful representation and that there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Barzee, 190 AD3d at 1021 [internal quotation marks and citations omitted]). Defendant specifically argues that counsel failed to subpoena the facility's keeper of records and/or the hearing officer to authenticate and lay a proper foundation for the admission of a report finding defendant not guilty of a weapon charge after a disciplinary hearing. However, we are unpersuaded by this argument as, even if counsel had laid the proper foundation, the hearing report and determination were "irrelevant," such that admission of this evidence would have been denied regardless (People v Miller, 96 AD3d 1451, 1452 [2012], lv denied 19 NY3d 999 [2012]). As to defendant's further claim that counsel failed to request a missing witness charge "for the People's failure" to call the alleged victim — the other incarcerated individual — as a witness, who would presumably have testified to being stabbed by defendant, this does not constitute ineffective assistance. To that end, it "cannot be said that failing to make the request was without legitimate strategy" because the People could have moved to reopen their case in light of such charge and the victim may have, in turn, corroborated other portions of the correction officers' testimony or otherwise called defendant's testimony into question (People v Jones, 184 AD3d 751, 752-753 [2020], lv denied 35 NY3d 1113 [2020]). "As the record demonstrates that counsel presented a clear trial strategy, effectively cross-examined witnesses and [*4]made appropriate opening and closing statements, we are satisfied that defendant was provided with meaningful representation" (People v Ruffin, 191 AD3d 1174, 1183 [2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 960 [2021]; see People v Walker, 191 AD3d 1154, 1159 [2021], lv denied 37 NY3d 961 [2021]).
Finally, defendant claims that County Court failed to arraign him in accordance with the statutory requirements of CPL 210.15 (1) because the court neither read the indictment aloud nor confirmed that he had received a copy of the indictment and wished to waive the reading of it. This argument is unpreserved as defendant failed to raise it before County Court (see People v Cook, 134 AD3d 1241, 1243 [2015], lv denied 26 NY3d 1143 [2016]). Defendant's remaining assertions have been examined and found to be lacking in merit.
Garry, P.J., Egan Jr., Lynch and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Although defendant's legal sufficiency challenge is unpreserved as "defendant failed to renew his motion for a trial order of dismissal after the presentation of his case" (People v Stone, 179 AD3d 1287, 1288 [2020]; see People v Persen, 185 AD3d 1288, 1289 [2020], lv denied 36 NY3d 1099 [2021]), this Court, "in reviewing defendant's challenge to the weight of the evidence . . .[,] necessarily determine[s] whether all of the elements of the charged crimes were proven beyond a reasonable doubt" (People v Barzee, 190 AD3d 1016 [2021], lv denied 36 NY3d 1094 [2021] [internal quotation marks and citations omitted]; see People v Bombard, 187 AD3d 1417, 1417-1418 [2020]).

Footnote 2: Prior to trial, defendant admitted that he was previously convicted of rape in the first degree, a class B felony, and that, on the day of the incident, he was confined in a detention facility (see Penal Law § 205.25 [2]).

Footnote 3: Defendant's challenge to the legal sufficiency of the grand jury evidence is precluded by our determination that the verdict was not against the weight of the evidence and, thus, "was necessarily founded upon legally sufficient evidence" (People v Sutton, 174 AD3d 1052, 1054 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 954 [2019]).